[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-15443
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 22, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:09-cr-00340-TCB-CCH-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BARBARA CLEVELAND,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 22, 2011)

Before HULL, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Barbara Cleveland appeals her convictions and 15-month sentence for

making false representations regarding information that was required to be

maintained in the records of a federal firearms licensee, in violation of 18 U.S.C. §§ 924(a)(1)(A), 2, and making false representations to a federal firearms licensee that were likely to deceive it as to facts material to a sale of firearms, in violation of 18 U.S.C. §§ 922(a)(6), 2. She argues, first, that the government constructively amended the indictment when it referred in closing argument to another allegedly false statement that was not alleged in the indictment. Second, she contends that she was entitled to an additional jury instruction stating specifically that reasonable doubt can arise from a lack of evidence. Finally, she claims that the imposition of a term of imprisonment was unreasonable under the circumstances. For the reasons set forth below, we affirm Cleveland's convictions and sentence.

I.

Cleveland moved to Gordon, Georgia, from Elizabeth, New Jersey, in August 2008. On August 18, 2008, she went with her brother, Hassan Alwali, to Elite Pawn & Jewelry in Conyers, Georgia. After she and Alwali examined a number of firearms, Cleveland purchased five guns, including a Taurus 92 with a laser sight. She indicated on an ATF-4473 form that she was the actual buyer of the firearms. With Alwali's assistance, Cleveland also purchased a .357 Magnum from an individual named Myron Banks, whom Alwali met at the store. Three of the firearms that Cleveland purchased from Elite Pawn & Jewelry were recovered

in New Jersey one to two months after the purchase. On September 24, 2008, after one of the firearms already had been recovered, Cleveland filed a police report claiming that the guns had been stolen from her shed. During an interview with law enforcement, Cleveland gave conflicting stories regarding her reasons for purchasing the guns, the cash she used for the purchase, her reasons for being in the Conyers area that day, whether the brother who had driven her moving truck from New Jersey had returned home before she purchased the guns, where she stored the guns, and when she discovered the alleged theft of the guns.

In 2009, a federal grand jury indicted Cleveland and Alwali on two counts: (1) making false representations regarding information that was required to be maintained in the records of a federal firearms licensee, in violation of 18 U.S.C. §§ 924(a)(1)(A), 2; and (2) making false representations to the licensee that were likely to deceive it as to facts material to a sale of firearms, in violation of 18 U.S.C. §§ 922(a)(6), 2. Specifically, the indictment alleged that Cleveland and Alwali falsely represented that Cleveland was the actual purchaser of the five pistols obtained from Elite Pawn & Jewelry.

At trial, in addition to the facts set forth above, the government presented testimony that it was unusual to sell five guns in a single transaction, that a gun

3

with a laser sight is not a standard home-protection gun, and that a .357 Magnum was "too powerful" for recreational shooting and was "a lot of gun for a woman."

Cleveland proposed including among the jury instructions the sentence, "A reasonable doubt may arise not only from the evidence produced at trial, but from a lack of evidence, for the law does not impose on the [d]efendant the duty of producing any evidence." The court found that the possibility of reasonable doubt arising from a lack of evidence was sufficiently covered and clearly implied by the pattern charge. Accordingly, it declined to add Cleveland's proposed instruction.

During its closing argument, the government contended that, when Cleveland purchased the five guns from the pawn shop, she knew that she was not the actual buyer because she was going to transfer the guns to Alwali, a convicted felon. In reviewing the Form 4473, the government argued as follows:

> And on this form, Government's Exhibit 4, question 11a, the question you heard a lot about: Are you the actual buyer? Ms. Cleveland says yes. She writes the word "yes" in. And it's explained. . . . It says the word "warning." You are not the actual buyer if you are acquiring the firearm on behalf of another person.
>     When she acquired those guns on behalf of her brother, Hassan Alwali, and she wrote yes in this form, she violated the law.
>     . . .
>     There's another question in here that we didn't talk about during trial, but it's in this form. And the form will go out with you. You'll see it. It's question 13. And it says: What is your state of residence? And Ms. Cleveland wrote Georgia. And then . . . it says .

4

. . you have a state of residence if you resided in a state for at least 90 days before the date of this form, September [sic] 18th. . . .

It is undisputed that Ms. Cleveland did not –

Cleveland interrupted to object that the government could not expand the indictment by arguing that Cleveland had lied on another part of the form. The government responded that the incorrect answer to the residence question showed Cleveland's intent, and that it was not going to argue that the incorrect answer was a crime. The court overruled the objection. The government resumed,

[W]hen Ms. Cleveland bought these five guns, she said that she was a resident of the state of Georgia. The definition is she's not a resident for 90 days. It states it right there on the form. Now, that's not the crime. The crime was lying on the 4473 about being an actual buyer. But that goes to her intent. That goes to her intent.

She was lying on this form. She was lying when she said she was the actual buyer and she was lying when [s]he said she was a resident of Georgia. It's clear she was not a resident of Georgia.

During Cleveland's closing argument, counsel argued at length that the government had failed to present sufficient evidence to support its case. The court gave the following jury instructions regarding the government's burden of proof:

It will be your duty to decide whether the [g]overnment has proved beyond a reasonable doubt the specific facts necessary to find the defendants guilty of the crimes charged in the indictment.

You must make your decision only on the basis of the testimony and other evidence presented here during the trial; and you must not be influenced in any way by either sympathy or prejudice for or against the defendants or the [g]overnment.

. . . .

5

The indictment or formal charge against the defendants is not evidence of guilt. Indeed, the defendants are presumed by the law to be innocent. The law does not require the defendants to prove their innocence or to produce any evidence at all; and you cannot consider the defendants' decision not to testify in any way during your deliberations. The [g]overnment has the burden of proving the defendants guilty beyond a reasonable doubt, and if it fails to do so, you must find the defendants not guilty.

Thus, while the [g]overnment's burden of proof is a strict or heavy burden, it is not necessary that the defendants' guilt be proved beyond all possible doubt. It is only required that the [g]overnment's proof exclude any reasonable doubt concerning the defendants' guilt.

A reasonable doubt is a real doubt, based upon reason and common sense after careful and impartial consideration of all the evidence in the case.

Proof beyond a reasonable doubt, therefore, is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs. If you are convinced that the defendants have been proved guilty beyond a reasonable doubt, say so. If you are not convinced, say so.

The court also reminded the jury that the defendants were "on trial only for those specific offenses charged in the indictment."

The jury found Alwali and Cleveland guilty on both counts. In Cleveland's presentencing investigation report ("PSI"), the probation officer calculated a total offense level of 14, pursuant to U.S.S.G. § 2K2.1(a)(7), (b)(1)(A). The probation officer considered adding the four-level firearm-trafficking enhancement in § 2K2.1(b)(5), but ultimately concluded that the evidence did not support it. Cleveland's absence of a criminal record placed her in criminal history category I.

She faced a statutory maximum of 5 years' imprisonment, as well as guideline ranges of 15 to 21 months' imprisonment and 2 to 3 years' supervised release. The PSI included the notation, "Probation Option: N/A."

Cleveland argued in a sentencing memorandum that a sentence of 12 months' home detention would be appropriate in light of her life history and the circumstances of the offense. She had been a law-abiding and productive citizen for her entire life, never receiving even a traffic citation before the instant offense. She had complied with all of the conditions of her pretrial supervision. She argued that her criminal history category, which would be equally applicable to an individual with uncounted prior or pending convictions or other law-enforcement "entanglements," did not adequately reflect her complete absence of prior criminal conduct. Furthermore, she had supported her family over the course of her life, she worked in the same demanding job for nearly 20 years, and she had no history of substance abuse. In light of these characteristics, she was unlikely to recidivate. She added that incarceration was not mandated in all situations and should not be the default choice prior to consideration of the 18 U.S.C. § 3553(a) factors.

At the sentencing hearing, the government argued that Cleveland "got a break" when the probation officer declined to apply the § 2K2.1(b)(5) enhancement, and that straw purchasers of firearms "by definition" have no

7

criminal history and "[a]lmost always" are family members or girlfriends. Such women often unwittingly agree to participate in the straw purchases, but Cleveland appeared to know "what she was doing," as she made both the pawn-shop purchase and the private purchase of the .357 Magnum. The government added that six firearms "is an awful lot," and that Cleveland had falsely reported to the police that the firearms had been stolen.

Cleveland argued that 18 U.S.C. § 3582(a) states that courts should consider whether a term of imprisonment or some other kind of sentence would be appropriate, and that § 3561(a)(1) indicates that probation is only unavailable for Class A and B felonies. Cleveland had committed a Class D felony. She further suggested that the Sentencing Commission is moving toward greater consideration of alternative sentencing. Additionally, Congress had not created a general statutory preference for imprisonment. Thus, in addition to the concerns of § 3553(a) and *Booker*,[1] the court could consider that the Guidelines themselves did not "do what Congress asked." She reiterated the arguments set forth in her sentencing memorandum and added that the inapplicability of the § 2K2.1(b)(5) enhancement was not a "close call."

---

[1] *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

The government agreed that Cleveland was not a likely recidivist, but it contended that she understood the potential "aftermath" of guns because she had worked for many years at a hospital in a high-crime area. Her history and characteristics did not weigh in favor of a strong sentence, but the seriousness of the offense warranted some "meaningful punishment."

The court found that a guideline sentence would be appropriate. It sentenced Cleveland to 15 months' imprisonment, 2 years' supervised release, and 100 hours of community service. It stated that it believed the sentence to be just and fair, and that it had considered all of the § 3553(a) sentencing factors.

## II.

In evaluating whether the indictment was constructively amended, we review the jury instructions and the prosecutor's comments in context to determine whether an expansion of the indictment occurred either literally or in effect. *United States v. Castro*, 89 F.3d 1443, 1450 (11th Cir. 1996). "A constructive amendment occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment." *Id.* at 1452-53 (quotation marks omitted). A constructive amendment violates the fundamental principle, stemming from the Fifth Amendment, that a defendant can only be convicted for a crime charged in

9

the indictment. *Id.* at 1453. Thus, a constructive amendment is *per se* reversible error. *United States v. Williams*, 527 F.3d 1235, 1246 (11th Cir. 2008).

Both counts of the indictment alleged only that Cleveland violated federal law when she falsely represented on the Form 4473 that she was the actual buyer of the five firearms that were purchased from the pawn shop. As the government reviewed the form during closing, it read to the jury the residency question and the accompanying explanation, "[Y]ou have a state of residence if you resided in a state for at least 90 days before the date of this form." It noted that Cleveland had identified herself as a resident of Georgia, even though she had not resided in Georgia for 90 days at that time. It then explained, "Now, that's not the crime. The crime was lying on the 4473 about being an actual buyer. But that goes to her intent. That goes to her intent. She was lying on this form." Thus, the government explicitly reminded the jury that only the actual-buyer statement could be the basis for a conviction, and it explained the limited purpose for which it wished the jurors to consider Cleveland's purported lie about her residency. Furthermore, the district court instructed the jury specifically that Cleveland was "on trial only for those specific offenses charged in the indictment." Thus, when viewed in context, the record does not suggest that the government's closing

argument had the effect of expanding the possible bases for conviction beyond the actual-buyer statement. *See Castro*, 89 F.3d at 1450, 1452-53.

### III.

Where a district court declines to use a proffered jury instruction, we review that decision for an abuse of discretion. *United States v. Dean*, 487 F.3d 840, 847 (11th Cir. 2007). We review *de novo* whether the instructions issued by the district court misstated the law or misled the jury. *United States v. James*, No. 10-10399, manuscript op. at 7 (11th Cir. June 9, 2011). "The district court has broad discretion in formulating its charge as long as the charge accurately reflects the law and the facts." *United States v. Spoerke*, 568 F.3d 1236, 1244 (11th Cir. 2009) (quotation and alteration marks omitted). Thus, "the refusal to give a proffered instruction only constitutes reversible error if: (1) the requested instruction was a correct statement of the law, (2) its subject matter was not substantially covered by other instructions, and (3) its subject matter dealt with an issue in the trial court that was so important that failure to give it seriously impaired the defendant's ability to defend himself." *Dean*, 487 F.3d at 847 (quotation marks omitted). "Error in jury instructions does not constitute grounds for reversal unless there is a reasonable likelihood that it affected the defendant's substantial rights." *United States v. Wright*, 392 F.3d 1269, 1277 (11th Cir. 2004).

"[W]e have repeatedly approved of the definition of reasonable doubt provided in the Eleventh Circuit Pattern Jury Instructions." *James*, manuscript op. at 8. Furthermore, the pattern instruction read by the court substantially addressed Cleveland's concerns, as it stated multiple times that the government bore the burden of proving her guilt, that she was not required to present any evidence, and that the jurors should acquit if they were "not convinced" of her guilt. Nothing in the record suggests that the jury would have been misled as to whether they could consider a perceived paucity of evidence to mean that the government had failed to satisfy its burden of proof. Accordingly, the pattern instruction was correct and the district court did not abuse its discretion in declining to add Cleveland's requested sentence. *See James*, manuscript op. at 7-8; *Dean*, 487 F.3d at 847.

IV.

We review the substantive reasonableness of a sentence under an abuse-of-discretion standard. *United States v. Irey*, 612 F.3d 1160, 1188 (11th Cir. 2010) (*en banc*), *cert. denied*, 131 S.Ct. 1813 (2011). We will reverse a sentence under that standard only if the district court has made a clear error of judgment. *Id.* at 1189. Our review must take into account the totality of the facts and circumstances, including the extent of any variance from the guideline range. *Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007).

12

The appellant bears the burden of establishing that the sentence is unreasonable. *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005).

After *Booker*, sentencing is a two-step process that requires the district court first to "consult the Guidelines and correctly calculate the range provided by the Guidelines," then to consider the factors in 18 U.S.C. § 3553(a) and determine a reasonable sentence. *Id.* at 786. Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with training or medical care; (6) the kinds of sentences available; (7) the sentencing guideline range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to the victims. *Id.* (discussing § 3553(a)).

The sentence must be sufficient, but no greater than necessary, to punish, deter, protect the public, and provide the training and care outlined in the statute. § 3553(a). In *Irey*, 612 F.3d at 1196-97, we rejected the term "parsimony principle" to describe this requirement, observing its tendency "to slant the discussion toward shorter sentences" and noting that "[t]he requirement is not

merely that a sentencing court . . . be stingy enough to avoid one that is too long, but also that it be generous enough to avoid one that is too short."

The district court commits a clear error of judgment if it weighs the § 3553(a) factors unreasonably, thus arriving at a sentence that does not achieve the statutory purposes of sentencing. *Id.* at 1189. It does not abuse its discretion, though, when it merely attaches "great weight" to a single, permissible factor or set of factors. *Gall*, 552 U.S. at 56-59, 128 S.Ct. at 600-02.

Here, Cleveland argued that her clean criminal record was not adequately reflected in her criminal history category, and that her background of gainful employment, adherence to the law, and family support made her a good candidate for probation. The government argued that she had committed a serious offense with full knowledge of the negative effect that the firearms would have on the target community, and that she had filed a false police report in furtherance of the crime. The court listened to both arguments, then concluded that a low-end guideline sentence would be just, fair, and appropriate in light of the § 3553(a) factors. Nothing in the record suggests that the court believed the Guidelines' disapproval of probation to be mandatory or presumptively correct. Accordingly, Cleveland has not shown that the district court made a clear error of judgment in imposing the 15-month sentence. *See Irey*, 612 F.3d at 1188-89.

14

For the foregoing reasons, we affirm Cleveland's convictions and sentence.

**AFFIRMED.**